UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUBERT LOPEZ,

Plaintiff,

-v-

ST. LUKE'S-ROOSEVELT HOSPITAL CENTER d/b/a MOUNT SINAI WEST, et al.,

Defendants.

23-CV-02880 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Hubert Lopez ("Plaintiff")[1] brings this suit alleging violations of the Fair Labor Standards Act ("FLSA"); New York Labor Law ("NYLL"); and the New York State Wage Theft Prevention Act ("WPTA") against defendants St. Luke's-Roosevelt Hospital Center, d/b/a Mount Sinai West ("Mount Sinai West"), and Mount Sinai Hospitals Group, Inc. (together, "Mount Sinai"), and individual defendants Richard Irizzary and Lloyd Vasquez (collectively with Mount Sinai, "Defendants"). *See* Am. Compl. at 1-2. Plaintiff alleges that Defendants engaged in unlawful employment practices, including failure to pay certain wages and overtime. *Id.*, ¶¶ 34-65, 77-84. Plaintiff also asserts that Defendants terminated

[1] The suit was initially brought as a putative collective action. *See* ECF No. 23 ("Amended Complaint" or "Am. Compl."). Magistrate Judge Gary Stein denied Plaintiff's motion for conditional certification of a collective action, with leave to renew, on February 28, 2024, *see* ECF No. 44 at 16, and Plaintiff has not filed a new motion to conditionally certify a collective. As such, the Court treats Plaintiff as an individual in resolving this motion.

his employment as unlawful retaliation for engaging in protected activity under the FLSA and the NYLL. *Id.*, ¶¶ 66-76.

Before the Court is a motion for summary judgment by Defendants as to all claims asserted in the Amended Complaint. ECF No. 67. For the reasons set forth below, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

Before turning to the facts, the Court addresses Plaintiff's deficient Rule 56.1 statement. *See* ECF No. 80 ("Pl. 56.1 Stmt."). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). The rule demands that "any motion for summary judgment . . . must be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). "Each statement denying and controverting any statement of material fact[] must be followed by *citation to evidence* that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d) (emphasis added). Any statements of material facts set forth by the moving party "will be deemed to be admitted for purposes of the motion unless specifically denied and

controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c).

Plaintiff's Rule 56.1 statement fails to comport with the local rules. Plaintiff supplies rote denials to several of Defendants' statements unaccompanied by citations to evidence. *See* Pl. 56.1 Stmt., ¶¶ 51, 52, 62, 63, 66-68. Rule 56.1 statements "should contain factual assertions, with citation to the record" rather than conclusory statements. *Rodriguez v. Schneider*, No. 95-CV-04083 (RPP), 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999), *aff'd*, 56 F. App'x 27 (2d Cir. 2003). Courts may deem undisputed any statement supported by admissible evidence if the objection is not supported with evidence. *Feis v. United States*, 394 Fed. App'x 797, 799 (2d Cir. 2010) (summary order). Plaintiff's unsupported denials thus fail to controvert Defendants' statements and cannot create a genuine dispute of material fact.[2] *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]").

Plaintiff also responds to several of Defendants' Rule 56.1 statements with "Unknown" or "Not known." *See* Pl. 56.1 Stmt., ¶¶ 53-56, 61, 64. Plaintiff cannot "raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information[,] in part because discovery allows the party opposing summary judgment to obtain the facts

---

[2] It is, however, acceptable for Plaintiff to controvert a Rule 56.1 statement by pointing out that it is unsupported by Defendants' citation. *See* Fed. R. Civ. P. 56(c)(1)(B).

necessary to determine whether it must admit or deny them." *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06-CV-02142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (cleaned up).

"The Court has considerable discretion in fashioning a remedy to address [Plaintiff's] failure to submit a Rule 56.1 statement in conformity with the Local Rules[.]" *Emanuel v. Griffin*, No. 13-CV-01806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015). Accordingly, to the extent that Plaintiff has failed to deny or specifically controvert factual assertions in Defendants' Rule 56.1, the Court deems those assertions admitted for the purpose of deciding the present motion. *See* Local Civ. R. 56.1(c)-(d).

## A. Factual Background

The following facts are drawn from the parties' Rule 56.1 statements and the underlying record.[3] Unless otherwise noted, the facts below are undisputed.

In November 2005, Plaintiff was employed by Mount Sinai West as a non-exempt security officer. Pl. 56.1 Stmt., ¶ 1; ECF No. 88 ("Pl. Dep.") at 8:17-18. As a security officer, Plaintiff was paid on an hourly basis and received overtime pay of time and a half. Pl. 56.1 Stmt., ¶ 2; Pl. Dep. at 15:17.

[3] Given the deficiencies in Plaintiff's Rule 56.1 statement, discussed *supra*, the Court deems factual assertions in Defendants' Rule 56.1 statement "admitted for purposes of the motion unless specifically denied and controverted" by Plaintiff's Rule 56.1 responses. Local Civ. R. 56.1(c). Where Plaintiff's Rule 56.1 response only controverts part of an assertion, the remainder is deemed admitted. Where a fact is deemed undisputed, the Court cites directly to Plaintiff's response. *See* Local Civ. R. 56.1(c). Citations to a Rule 56.1 statement incorporate the evidentiary materials cited therein. Where Plaintiff disputes a fact, the Court will indicate the dispute and cite to the underlying evidentiary materials.

In February 2006, Plaintiff was promoted to field supervisor. Pl. 56.1 Stmt., ¶ 3. Plaintiff and Defendants dispute how Plaintiff was compensated as a field supervisor. According to Defendants, the position of field supervisor in the Department of Security at Mount Sinai is salaried and categorized as exempt. ECF No. 73 ("Reid Decl."), ¶ 3. But Plaintiff asserts that he was paid hourly rather than salaried in his role as a field supervisor. Pl. Dep. at 32:8-10. It is undisputed, however, that Plaintiff was compensated with additional straight pay for working over 40 hours per week in this role. Pl. 56.1 Stmt., ¶ 12.

As a field supervisor, Plaintiff supervised 12-13 security officers at a time, whose performance he monitored and reviewed. *Id.*, ¶¶ 14, 17; Pl. Dep. at 22:8–24:25. In this position, his job duties included coaching others, checking security officers' posts, disciplining the officers for various infractions, and undertaking investigations. Pl. 56.1 Stmt., ¶¶ 16, 18, 19, 25. Plaintiff also evaluated the performance of new security officers during their probationary period and conducted their post-probation review. *Id.*, ¶ 22; Pl. Dep. at 19:2-5.

In April 2019, Plaintiff was promoted to the position of senior supervisor, which paid a salary for at least a portion of the time that Plaintiff was employed in this role. Pl. 56.1 Stmt., ¶¶ 5, 26. Plaintiff earned additional paid time off for extra shifts he worked in this position. *Id.*, ¶ 27; Pl. Dep. at 35:2–36:2. After being promoted, Plaintiff complained that his pay did not increase. Pl. 56.1 Stmt., ¶ 46; Pl. Dep. at 51. He received a pay raise in early 2021. Pl. 56.1 Stmt., ¶ 47; Pl. Dep. at 52:3–53:16.

As a senior supervisor, Plaintiff continued performing some duties he had as a field supervisor. *See* Pl. 56.1 Stmt., ¶¶ 36, 37. In addition, Plaintiff was put in charge of the field supervisors and provided input on how they are appraised. *Id.*, ¶¶ 31, 33; Pl. Dep. at 43:7–45:5. In this role, he was responsible for supervising a proactive security operation on his shift, ensuring a properly trained force, and providing input on operational issues. Pl. 56.1 Stmt., ¶ 30. During a typical shift, Plaintiff would check the various posts, take care of paperwork, and respond to emergencies as needed. *Id.*, ¶¶ 37-39.

On or around July 2021, Plaintiff complained to Devin Sullivan ("Sullivan"), Mount Sinai West's President of Human Resources and Labor Relations, that he was not being paid a night shift differential—additional pay for working the night shift. *Id.*, ¶¶ 40-41; Pl. Dep. at 49:2-10; *see* ECF No. 72 ("Sullivan Decl."), ¶¶ 5-6. An investigation determined that Plaintiff worked the evening shift from May 2020 to May 2021 but was not paid the night shift differential. Pl. 56.1 Stmt., ¶ 43; ECF No. 72-3 at 1-3. Upon discovering this, Mount Sinai West paid Plaintiff the full amount he was owed. Pl. 56.1 Stmt., ¶ 45; Sullivan Decl., ¶10; *see* ECF No. 72-3 at 1.

In November 2021, Plaintiff received a score of "Development Needed" on his performance review. Pl. 56.1 Stmt., ¶ 49; ECF No. 68-1 at 107. The review noted that, among other deficiencies, Plaintiff "did not complete the performance evaluations for his staff" and was unable "to come to work on time and turn out [his] staff on a timely basis . . . throughout the year." ECF No. 68-1 at 101, 108. The

review further urged Plaintiff to leave his office more to establish relationships with other departments and to follow up on his directives to staff. *Id.* at 101-08.

On July 12, 2022, Security Officer Pramnauth Ramlakhan ("Ramlakhan") submitted a complaint to Richard Irizarry ("Irizarry"), the Director of the Security Department; Lloyd Vasquez ("Vasquez"), the Assistant Director of the Security Department; and Sullivan. Pl. 56.1 Stmt., ¶¶ 9-10, 51; *see* ECF No. 70-1. The complaint stated that on July 9, 2022, Ramlakhan witnessed another officer, Colin Howell ("Howell"), carrying a black plastic bag containing a liter of Smirnoff liquor, and that Plaintiff had instructed Howell to purchase the alcohol from a liquor store on company time. Pl. 56.1 Stmt., ¶ 51; ECF No. 70-1. Ramlakhan told Irizarry and Vasquez that in the past, Plaintiff had asked Ramlakhan to purchase alcohol for him. Pl. 56.1 Stmt., ¶61; ECF No. 70 ("Irizarry Decl."), ¶ 6; ECF No. 71 ("Vasquez Decl."), ¶ 7.

Irizarry and Vasquez met with Howell regarding Ramlakhan's complaint. Pl. 56.1 Stmt., ¶ 53. Howell stated that he had been directed to purchase liquor by Plaintiff at least once or twice a month for the past year, and that another retired security officer was tasked with the same thing by Plaintiff before he was. *Id.*, ¶¶ 55, 56. Howell provided a written statement to this effect. ECF No. 71-1. Irizarry and Vasquez also obtained security footage from July 9, 2022, which corroborated Howell's statements. Pl. 56.1 Stmt., ¶ 62; Irizarry Decl., ¶ 7.

When Irizarry and Vasquez met with Plaintiff to ask him about Howell's statements, Plaintiff denied ever directing another employee to buy liquor for him

while on duty. Pl. 56.1 Stmt., ¶¶ 58, 59; Irizarry Decl., ¶ 5; *see* ECF No. 71-2. After investigating, Irizarry and Vazquez determined that Plaintiff directed security officers to purchase alcohol for him while on duty and to bring alcohol onto hospital premises in violation of Mount Sinai West's substance abuse policy and employee code of conduct. Pl. 56.1 Stmt., ¶¶ 63-66; *see* ECF Nos. 72-1, 72-2. Irizarry and Vazquez also found that Plaintiff's conduct constituted a violation of trust, abuse of his power as a supervisor, and a waste of hospital resources. Pl. 56.1 Stmt., ¶¶ 66, 67; Irizarry Decl., ¶ 9; ECF No. 70-2. Accordingly, Plaintiff was terminated on August 9, 2022. Pl. 56.1 Stmt., ¶ 68; ECF No. 70-2.

## B. Procedural History

On April 6, 2023, Plaintiff filed a complaint against Defendants, asserting claims for: (i) unlawful failure to pay overtime compensation and maintain accurate records of hours worked in violation of the FLSA; (ii) unlawful failure to pay overtime compensation in violation of the NYLL; (iii) unlawful failure to give proper wage notice and keep records in violation of the NYLL; (iv) retaliation in violation of the FLSA; (v) retaliation in violation of the NYLL; and (vi) unlawful failure to pay timely wages in violation of the NYLL. *See* ECF No. 1 at 1, 5-12.

Plaintiff filed the Amended Complaint on September 5, 2023, making the suit a putative collective action on behalf of himself and others similarly situated without altering the substance of his claims. *See* Am. Compl., ¶¶ 26-84. Plaintiff's motion for conditional certification of the collective action was denied on February 28, 2024, with leave to renew, *see* ECF No. 44, but Plaintiff has not filed a renewed

motion to conditionally certify a collective. On January 21, 2025, Defendants filed their motion for summary judgment. ECF No. 67. Despite moving for summary judgment as to all claims that Plaintiff asserts, *id.*, Defendants do not raise any arguments as to Count III of the Amended Complaint, which asserts a lack-of-notice claim under N.Y. Lab. Law § 195, Am. Compl., ¶¶ 62-65. *See generally* ECF No. 75 ("Def. Mem.").

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 249. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. a*t 249-50 (citations omitted).

The moving party bears the initial burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). The movant may satisfy this burden by "submitting evidence that negates an

essential element of the [nonmovant's] claim" or by "demonstrating that the [nonmovant's] evidence is insufficient to establish an essential element of the [nonmovant's] claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]here the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied[.]" *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up).

Parties must support assertions that a fact is or is not genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). Courts must "disregard conclusory denials that lack citations to admissible evidence." *Barahona v. Hebrew Acad. of the Five Towns & Rockaway*, 825 F. Supp. 3d 124, 131 (E.D.N.Y. 2026). Courts are further "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted).

## DISCUSSION

Defendant moves for summary judgment with respect to Plaintiff's claims for retaliation, overtime compensation, and failure to pay weekly wages. The undisputed

record establishes that Plaintiff was terminated for a legitimate, non-discriminatory reason. Accordingly, his retaliation claims fail. On the other hand, genuine issues of material fact preclude a grant of summary judgment as to whether Plaintiff is a manual worker entitled to weekly wage payments and whether he is properly categorized as an exempt employee for purposes of overtime compensation.

### A. Retaliation Under FLSA and NYLL

The Court begins with Plaintiff's retaliation claims under the FLSA and the NYLL. Both FLSA and NYLL retaliation claims are "subject to the three-step burden-shifting framework" established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Velazquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order) (FLSA); *Tilchen v. Cemd Elevator Corp.*, No. 17-CV-00051 (PAC), 2019 WL 4640184, at *5 (S.D.N.Y. Sept. 24, 2019) (FLSA and NYLL); *Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-01282 (JPO), 2015 WL 1055902, at *9-10 (S.D.N.Y. Mar. 11, 2015) (FLSA and NYLL).

The plaintiff must first establish a prima facie case of retaliation by showing: "(1) participation in protected activity known to the defendant, [such as] the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53. The burden then "shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action." *Id.* (cleaned up). If the defendant succeeds, the plaintiff must then "produce sufficient

evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id.* at 53-54 (cleaned up).

**1. Prima Facie Case of Retaliation**

To make out a prima facie case of retaliation, Plaintiff must first establish that he engaged in protected activity under the FLSA and the NYLL. The Second Circuit instructs that "an employee may premise [an FLSA] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). Similarly, under the NYLL, an employee's complaint "need not cite a specific statute" but "must be of a colorable violation of the statute." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (cleaned up).

Plaintiff complained twice about his pay at Mount Sinai West: he complained after his April 2019 promotion[4] about "being underpaid as a senior supervisor," Pl. Dep. at 52:10-11; Pl. 56.1 Stmt., ¶ 46, and he complained in July 2021 about not

[4] The timing of this complaint is unclear, but it appears to be some time after Plaintiff's promotion in April 2019 and before January to February 2021, which is when he received the raise. *See* Pl. Dep. at 52:3-21.

being paid his night shift differential, Pl. 56.1 Stmt., ¶ 40. Both issues were later rectified. *See* Pl. Dep. at 53:7-23.

Plaintiff's first complaint does not constitute protected activity. Courts in this District have held that asking for a pay raise, without more, is not protected conduct under the FLSA. *See, e.g.*, *Robinson v. De Niro*, 739 F. Supp. 3d 33, 76 (S.D.N.Y. 2023) ("[T]he mere request for a pay raise . . . cannot constitute protected activity without making all routine workplace behavior into protected activity."); *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 111-12 (S.D.N.Y. 2015) (holding that the plaintiff's oral complaint about a retroactive pay increase owed to her did not constitute protected activity under the FLSA because it was not detailed enough to put her employer on notice that she was asserting rights protected by the FLSA). The FLSA does not "generally federalize[] disputes between employers and employees." *Dunn*, 143 F. Supp. 3d at 111 (collecting cases). Plaintiff adduces no evidence to demonstrate that his first complaint was anything more than a generic request for a raise upon being promoted. Thus, no reasonable factfinder could conclude that Plaintiff's request for a pay raise put Defendants on "fair notice that [he was] making a complaint that could subject the employer to a later claim of retaliation." *Kasten*, 563 U.S. at 13.

Nor does Plaintiff's first complaint fare better under the NYLL. In 2019, Plaintiff earned more than $33/hour, or approximately $67,499 in total, *see* ECF No. 73-1 at 71—above the then-minimum wage and salary set by New York State.[5]

[5] For workers paid hourly, New York State minimum wage was $15.00/hour in 2019. N.Y. Lab. Law § 652(1)(a)(i) (2016) (remaining effective in 2019). For those who

Plaintiff's complaint about being underpaid therefore failed to identify a colorable violation of the NYLL.

There is a triable issue of fact, however, as to whether Plaintiff's July 2021 complaint about night differentials was protected activity under the FLSA. Plaintiff informed his employer that he was not receiving "additional pay for working the night shift." Pl. Dep. at 49:8-10. Complaining about night shift differentials implicated Plaintiff's overtime compensation,[6] because the differentials affect how overtime compensation is calculated under the FLSA. *See* 29 C.F.R. § 778.207(b). Construing the evidence in a light most favorable to the nonmovant, a reasonable factfinder could thus conclude that Plaintiff's July 2021 complaint was sufficient to put Defendants on notice of a FLSA violation. Although Plaintiff did not characterize the night shift differential as a legal violation, "an employee need not state his complaints with lawyerly precision" to secure protections against retaliation. *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 471 (S.D.N.Y. 2021).

Even assuming that Plaintiff's July 2021 complaint constitutes protected activity, he cannot establish a causal nexus between this complaint and his termination. A causal connection "may be established by (1) 'evidence of retaliatory animus directed against a plaintiff by the defendant'; or (2) a close temporal

---

worked in a bona fide executive capacity for employers with 11 or more employees, New York State minimum salary was $1,125 per week in 2019. 12 N.Y.C.R.R. § 143.1(b)(1)(v)(a)(1) (2016) (remaining effective in 2019). Regardless of whether Plaintiff was a bona fide executive at this time, he was not underpaid under the NYLL.

[6] Plaintiff worked overtime regularly. *See* Pl. Dep. at 31:5-8.

proximity between the protected activity and the adverse employment action." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (quoting *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)).

Plaintiff proffers no evidence that retaliation animated his termination. *See* ECF No. 79 ("Pl. Mem.") at 10-12. Nor can temporal proximity rescue Plaintiff's theory of causation: thirteen months separate his July 2021 complaint and August 2022 termination. Without more, a lapse in time of "more than a few months is generally too long" to support an inference of causation. *Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-09171-CV, 2022 WL 17587564, at *2 (2d Cir. Dec. 13, 2022) (summary order) (collecting cases); *see also Cunningham v. Consol. Edison Inc.*, No. 03-CV-03522 (CPS), 2006 WL 842914, at *19-20 (E.D.N.Y. Mar. 28, 2006) ("[A] lag of three, four, and fourteen months is too long for a causal inference to be appropriate."); *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) (collecting cases holding that temporal proximity must be "very close" to establish causation).

Plaintiff seeks to bridge the thirteen-month gap with an intervening negative review from November 2021, which gave him a "Development Needed" rating. Pl. Mem at 11.; Pl. 56.1 Stmt., ¶ 49. The review stated that Plaintiff "did not complete the performance evaluations for his staff" and was unable "to come to work on time and turn out [his] staff on a timely basis . . . throughout the year." ECF No. 68-1 at 101, 108.

The November 2021 review supplies neither retaliatory animus nor temporal proximity for Plaintiff's theory of causation, however. First, Plaintiff's "subjective disagreement with his employer's assessment of his performance is not sufficient to demonstrate retaliatory intent." *Wilson*, 2022 WL 17587564, at *2 (cleaned up). Nor can Plaintiff rely on the four-month gap between his July 2021 complaint and the November 2021 review to establish retaliatory intent. In this Circuit, "passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham*, 2006 WL 842914, at *19 (collecting cases).

The record forecloses the inference of causation for an additional reason. Where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Criticism of Plaintiff's job performance predated his July 2021 complaint by well over a year. On February 6, 2020, Plaintiff received a warning for "Excessive Lateness" that cited 15 dates on which he was late over a five-month period. ECF No. 68-2 at 144. This corroborates the tardiness that animated his November 2021 review. Because no reasonable juror could find a causal connection between Plaintiff's protected activity and his termination, he has not made out a prima facie case of retaliation under the FLSA or NYLL.

**2. Legitimate, Non-Retaliatory Reason for Termination**

Assuming *arguendo* that Plaintiff established a prima facie claim of retaliation related to his termination, his claim still fails as a matter of law. Defendants adduced sufficient evidence to establish a legitimate, non-retaliatory reason for Plaintiff's termination beyond genuine dispute.

Plaintiff was terminated by Mount Sinai West on August 9, 2022. ECF No. 70-2. His termination letter stated that he had engaged in serious misconduct and violated hospital policy by directing staff to purchase alcohol for him and possessing unauthorized alcohol on hospital premises. *Id.* It is well-established that violating company policy is a legitimate, non-retaliatory reason for termination. *See, e.g.*, *Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 14 (2d Cir. 2019) (summary order) (holding that there was a legitimate, non-retaliatory reason for termination where the plaintiff violated company policy); *Spiess v. Xerox Corp.*, 481 F. App'x 700, 701 (2d Cir. 2012) (summary order) (same); *Adams v. Equinox Hldgs, Inc.*, 662 F. Supp. 3d 444, 462 (S.D.N.Y. 2023) (same), *aff'd*, No. 23-00608-CV, 2024 WL 1787108 (2d Cir. Apr. 25, 2024).

Uncontroverted facts show that before terminating Plaintiff, Defendants: (1) received a complaint alleging that Plaintiff instructed Security Officer Howell to purchase alcohol for him on company time, Pl. 56.1 Stmt., ¶¶ 51-54; (2) learned directly from Howell that Plaintiff had been directing him to purchase liquor at least twice a month over the span of a year, ECF No. 71-2; (3) collected a signed statement from Howell to this effect, *see* ECF No. 71-1; and (4) corroborated

Howell's account with camera footage, Irizarry Decl., ¶ 7. *See* Pl. 56.1 Stmt., ¶¶ 61-63.

"If [an] employer articulates a non-retaliatory explanation for its conduct, the presumption of retaliation is eliminated, and the plaintiff must meet [his] ultimate burden of proving 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 799 (S.D.N.Y. 2020) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). A plaintiff can meet this burden by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action," such that a reasonable factfinder could conclude that the employer's "explanations were a pretext for a prohibited reason." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). A plaintiff may also rely "on the evidence comprising the prima facie case[.]" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 173 (2d Cir. 2006) (citation omitted).

As evidence of pretext, Plaintiff offers only that "the hospital policy prohibiting sending hospital staff to run errands is not mentioned anywhere in Plaintiff's termination notice." Pl. Mem. at 12. This is a non sequitur. Plaintiff was terminated for the "unauthorized possession of alcoholic beverages on Hospital premises," in violation of Mount Sinai's Substance Abuse policies. ECF No. 70-2. His repeated direction to staff to "violate this policy" for his own "personal benefit" was also deemed "highly unprofessional, a serious violation of trust, and disruptive to Hospital operations." *Id.*

There is thus insufficient evidence for a reasonable factfinder to conclude that Plaintiff's termination "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Zann Kwan*, 737 F.3d at 845 (quoting *Nasser*, 570 U.S. at 360). Accordingly, the Court grants Defendants' motion for summary judgment with respect to the retaliation claims.

**B. Manual Worker Under NYLL**

Defendant moves for summary judgment with respect to Plaintiff's claim for failure to pay timely wages pursuant to NYLL Section 191's requirement that "manual worker[s] shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i). Defendant argues that Plaintiff is not a "manual worker" under Section 191. Def. Mem. at 14.

The statutory definition of "manual worker" is "a mechanic, workingman or laborer." N.Y. Lab. Law § 190(4). It has been the New York Department of Labor's ("NYDOL") longstanding interpretation that individuals who spend more than twenty-five percent of working time engaged in physical labor fit within the meaning of the term "manual worker." *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304 (MKB), 2014 WL 1011070, at *12 (E.D.N.Y. Mar. 14, 2014) (citing N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066 (May 21, 2009)). To determine whether an employee is a "manual worker," the NYDOL "looks at the duties performed by an employee" and "makes a case-by-case determination." *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 225-26 (S.D.N.Y. 2023) (citing N.Y. Dep't

of Labor Counsel Opinion Letter RO-09-0066); *Gonzales*, 2014 WL 1011070, at *12. New York courts have found "carpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers" to be "manual workers." *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-01417 (JLS) (HBS), 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) (collecting cases), *report and recommendation adopted*, No. 19-CV-01417 (JLS) (HBS), 2021 WL 3914320 (W.D.N.Y. June 23, 2021).

Plaintiff has created a triable issue of fact as to whether he qualified as a "manual worker" under NYLL Section 191. Defendants argue that Plaintiff admitted "his role was essentially a desk job" during deposition, Def. Mem. at 14, but this mischaracterizes the underlying evidence. In his deposition, Plaintiff testified that: (i) there was an "office . . . for all the supervisors," Pl. Dep. at 42:14-15; (ii) one of his responsibilities was to "schedule for the supervisors and . . . regular officers," *id.* at 43:13-15; and (iii) he had to take care of paperwork after making sure everything was proper at various security posts, *id.* at 58:16–61:25. None of the evidence adduced by Defendants support their proposition that "the vast majority of Plaintiff's time was spent at his desk." Def. Mem. at 15. Plaintiff's affidavit states that he spends more than twenty-five percent of his shifts performing physical labor.[7] ECF No. 82 ("Pl. Aff."), ¶ 2. Specifically, Plaintiff

[7] Defendants invoke the sham affidavit doctrine, asking the Court not to credit Plaintiff's affidavit because it contradicts Plaintiff's deposition testimony. *See* ECF No. 84 ("Def. Reply") at 5. In doing so, Defendants mischaracterize Plaintiff's deposition as "conclusively establish[ing] that he did not spend 25% or more of his time engaged in physical labor." *Id.* at 5 n.2. Plaintiff's deposition testimony stated that during *some* shifts, he attends to only one to two emergencies that take as little

attests that he responded to emergencies around the hospital, which required walking around the premises (sometimes up to seven hours per shift), restraining patients, and patrolling. *Id.*, ¶¶ 3-8.

Whether Plaintiff was "manual worker" under NYLL Section 191 is a question of fact reserved for the jury. Accordingly, Defendants' motion for summary judgment on Count VI is denied.

### C. Exempt Status Under FLSA and NYLL

Defendants move for summary judgment on Plaintiff's claims for unpaid overtime and time spent working during unpaid meal breaks, arguing that he was an exempt employee under the FLSA and the NYLL. Def. Mem. at 16. Under both the FLSA and the NYLL, employers are exempt from overtime compensation requirements with respect to any employee employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); N.Y. Lab. Law § 651(5)(b). An employee employed in a bona fide executive capacity is one:

> (1) Compensated on a salary basis . . . at a rate of not less than $684 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and

---

as ten minutes to resolve, Pl. Dep. at 64:11-21, but this describes the *minimum*—not average—proportion of Plaintiff's shifts spent performing physical labor. Because Plaintiff's affidavit does not "inescapably and unequivocally" contradict his deposition, *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 206 (2d Cir. 2014), the sham affidavit doctrine is inapposite here.

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion[,] or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a); *see also Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012) ("Like the FLSA, the NYLL mandates overtime pay and applies the same exemptions as the FLSA." (cleaned up)). "Because the FLSA is a remedial act, its exemptions, such as the bona fide executive exemption claimed in this case, are to be narrowly construed." *Ramos*, 687 F.3d at 558 (cleaned up). In order to be entitled to summary judgment on the bona fide executive exemption, Defendants must satisfy each of the four criteria. *See Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 520-23 (S.D.N.Y. 2013). Yet there are triable fact issues with respect to several of the regulatory factors—the Court addresses two.

Whether Plaintiff's primary duty was management is a disputed question of fact. Management activities include "interviewing, selecting, and training of employees," "setting and adjusting their rates of pay and hours of work," "directing the work of employees," and "appraising employees' productivity and efficiency." 29 C.F.R. § 541.102. Whether management is an employee's "primary duty" is to be determined based on the "character of the employee's job as a whole." 29 C.F.R. §541.700(a). Relevant considerations include, but are not limited to, "the relative importance of the exempt duties as compared with other types of duties," "the amount of time spent performing exempt work," "the employee's relative freedom from direct supervision," and "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the

employee." *Id.* "Consideration of these factors is a highly fact-intensive inquiry, to be made on a case-by-case basis in light of the totality of the circumstances." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010) (cleaned up).

The Court reserves this fact-intensive inquiry for the jury. As a field supervisor and senior supervisor, Plaintiff had daily interactions with Assistant Director Vasquez, who oversaw his work. *See* Pl. Dep. at 65:11–67:8. When conducting performance evaluations of staff, Plaintiff attests that he "always had to go through Vasquez for approval." *Id.* at 113:23–114:3. Plaintiff also spent significant time performing non-exempt work as a field supervisor—he responded to emergencies and patrolled the hospital, sometimes staying engaged on his feet up to seven hours per shift. *See* Pl. Aff., ¶¶ 3-8. This evidence raises genuine questions regarding the degree of Plaintiff's freedom from direct supervision and the relative amount of time he spent performing exempt versus non-exempt work. Therefore, the record is sufficient for a reasonable trier of fact to conclude that, based on the totality of the circumstances, Plaintiff's primary duty was not management.

Additionally, Plaintiff creates a triable issue of fact as to whether his recommendations concerning hiring and firing were given particular weight.[8] In Plaintiff's deposition, he testified that Vasquez was his "micromanager," who

---

[8] Defendants argue that Plaintiff's Rule 56.1 statement fails to dispute that "Plaintiff's suggestions and recommendations . . . were given particular weight." Def. Reply at 9. Plaintiff's Rule 56.1 statement, however, points out that this assertion was "not supported by defendants' citation." Pl. 56.1 Stmt., ¶ 24. Plaintiff has placed this fact in genuine dispute by showing that the "materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B).

instructed him what to write in his incident reports. Pl. Dep. at 66:20–69:13. Plaintiff also testified that Vazquez did not credit Plaintiff's suggestion to terminate a security officer, who had already been terminated once before, for tardiness. *Id.* at 69:14–70:15. Although it is true that "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' . . . if the employee does not have authority to make the ultimate decision," 29 C.F.R. § 541.105, it is the jury's role to weigh the balance of evidence.

Construing all evidence in light most favorable to the nonmovant, a reasonable factfinder may conclude that Plaintiff's roles at Mount Sinai West did not fall within the bona fide executive exemption. Accordingly, Defendants' motion for summary judgment on Plaintiff's remaining FLSA and NYLL claims is denied.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's retaliation claims under the FLSA and NYLL are dismissed. Defendants' motion for summary judgment is otherwise denied.

The Clerk of Court is directed to terminate ECF No. 67.

SO ORDERED.

Dated: August 7, 2026
New York, New York

Jeannette Vargas
JEANNETTE A. VARGAS
United States District Judge